UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ALICIA S.,[1]

                    Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

_____

<u>DECISION & ORDER</u>

21-CV-1264MWP

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Alicia S. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income and Disability Insurance Benefits ("SSI/DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 10).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 7, 8). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## DISCUSSION

### I.       Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

2

they are supported by substantial evidence, the Commissioner's findings of fact must be

sustained "even where substantial evidence may support the claimant's position and despite the

fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v.*

*Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d

60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must

employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)

(*per curiam*). The five steps are:

    (1)    whether the claimant is currently engaged in substantial gainful activity;

    (2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

    (3)    if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

    (4)    if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

    (5)    if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

3

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.   <u>The ALJ's Decision</u>

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 16-21).[2]  Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 6, 2018, the alleged onset date. (Tr. 17).  At step two, the ALJ concluded that plaintiff had the following medically determinable impairments: obesity; anxiety; depression; and, bipolar disorder. (*Id.*).  The ALJ found "no evidence that the claimant's obesity causes any functional limitations." (Tr. 19).  With respect to plaintiff's mental limitations, the ALJ assessed mild difficulties in understanding, remembering, and applying information; interacting with others; maintaining concentration, persistence, and pace; and, in adapting and managing herself. (Tr. 20-21).  The ALJ then concluded that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, [her conditions] are nonsevere." (Tr. 21 (emphasis omitted)).  Because the ALJ found that plaintiff had no severe conditions, he concluded that plaintiff was not disabled. (*Id.*).

---

[2]  The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

III.   **Plaintiff's Contentions**

Plaintiff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket # 7-1).  Specifically, plaintiff maintains that the ALJ erroneously found that she did not have a severe mental impairment at step two of the sequential analysis and that this error owed, in part, to his failure to fully develop the record.  (*Id.*).

IV.   **Analysis**

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(a)(4)(ii), (c).  The claimant bears the burden to present evidence demonstrating severity at step two.  *See Briggs v. Astrue*, 2011 WL 2669476, *3 (N.D.N.Y.), *report and recommendation adopted by*, 2011 WL 2669463 (N.D.N.Y. 2011).  "An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Jeffords v. Astrue*, 2012 WL 3860800, *3 (W.D.N.Y. 2012) (citation omitted); *see also Schifano v. Astrue*, 2013 WL 2898058, *3 (W.D.N.Y. 2013) ("[a]n impairment is severe if it causes more than a *de minimis* limitation to a claimant's physical or mental ability to do basic work activities").

Moreover, where the claimant's alleged disability includes mental components, at steps two and three the ALJ must also apply the so-called "special technique."  *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *see also* 20 C.F.R. §§ 404.1520a(b)-(e).  Specifically,

the ALJ must rate the claimant's "degree of functional limitation resulting from" a medically determinable mental impairment in "four broad functional areas":  (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and, (4) adapting or managing oneself.  20 C.F.R. §§ 404.1520a(b)-(c); *see also Lynn v. Colvin*, 2017 WL 743731, *2 (W.D.N.Y. 2017) (discussing former version of 20 C.F.R. § 404.1520a(c)(3)).  "If and how the analysis proceeds from that point depends upon the degree of impairment found.  However, the ALJ must document his analysis, and his written decision must reflect application of the technique, and include a specific finding as to the degree of limitation in each of the four functional areas."  *Lynn v. Colvin*, 2017 WL 743731 at *2 (alterations and quotations omitted).

Here, the ALJ recognized at step two that plaintiff's mental impairments were medically determinable, but found that the conditions were not severe because they "cause[d] no more than 'mild' limitation in any of the functional areas and the evidence d[id] not otherwise indicate that there [was] more than a minimal limitation in the claimant's ability to do basic work activities."  (Tr. 21 (emphasis omitted)).  In reaching this conclusion, the ALJ discussed mental status examinations of record that, according to the ALJ, were "generally . . . normal[,] noting a normal mood and affect, intact concentration, intact judgment, intact memory functioning, and intact cognitive functioning."  (Tr. 19).  The ALJ concluded that "[t]he medical evidence concerning the claimant's impairments[] provide[d] only limited support for her allegations, and tend[ed] to suggest that her symptoms [were] not as severe, persistent or limiting as she ha[d] alleged."  (*Id.*).

The ALJ also considered the February 7, 2019 medical examination for employability assessment completed by plaintiff's psychiatrist, Mark Varallo, M.D.

(Tr. 733-34).  Dr. Varallo indicated that plaintiff had been attending individual sessions related to her opiate use disorder for the past forty months and had been prescribed various medications for her unspecified anxiety and depressive disorders.  (*Id.*).  In terms of plaintiff's mental functioning, Dr. Varallo assessed that she had no limitation in maintaining basic standards of personal hygiene and grooming, but that she suffered from moderate limitations in the areas of understanding, remembering, and carrying out instructions; maintaining attention and concentration; making simple decisions; interacting appropriately with others; and, maintaining socially appropriate behavior without exhibiting behavioral extremes.  (Tr. 733).  Dr. Varallo also assessed that plaintiff was very limited in her ability to function in a work setting at a consistent pace.  (*Id.*).  He indicated that, considering her limitations, all work conditions, environments, and activities were contraindicated "at this time."  (*Id.*).  He also emphasized that plaintiff "continue[d] to struggle with depressed mood[] [and] poor concentration."  (*Id.*).  The ALJ found this opinion not persuasive as it was "not supported by a detailed explanation or objective findings" and was "not consistent with the record as a whole[,] which typically noted a normal mood and affect, intact concentration, intact judgment, intact memory functioning, and intact cognitive functioning."  (Tr. 20).

Dr. Varallo completed a second medical source statement on June 20, 2019. (Tr. 625-27).  He indicated that plaintiff "present[ed] [with] increased anxiety" and had bipolar disorder and social phobia.  (Tr. 625).  She was being treated with medication, biweekly counseling, and psychiatric appointments every two months.  (*Id.*).  As for her mental status examination, Dr. Varallo described plaintiff as cooperative, friendly, and adequately groomed. (*Id.*).  She exhibited appropriate speech and logical thought process, but an anxious mood and congruent affect.  (*Id.*).  She demonstrated normal attention, was fully oriented, and her memory

appeared intact. (*Id.*). Her insight and judgment were evaluated as fair. (Tr. 626). With respect to activities of daily living, Dr. Varallo indicated that plaintiff was currently unemployed due to her mental health but took care of her young son. (*Id.*). He assessed no limitation in understanding and memory; sustaining concentration and persistence; and, adapting herself. (Tr. 626-27). However, he indicated that she was limited in the area of social interaction due to her social phobia and difficulties managing relationships. (Tr. 626). The ALJ found this opinion partially persuasive, noting that it was "largely consistent with [Dr. Varallo's] objective exam noting normal findings." (Tr. 20). The ALJ, however, found that the "assessed social interaction limitations [were] largely based upon the claimant's subjective complaints and [were] not consistent with Dr. Varallo's objective findings or the record as a whole noting generally normal findings." (*Id.*).

The ALJ also considered the opinion of psychiatric consultative examiner Dane Alexander, Psy.D., dated June 21, 2019. (Tr. 629-32). Dr. Alexander noted that plaintiff traveled approximately six miles by public transportation to the evaluation, resided with her grandparents and child, and left her last job "due to the doctor taking her out of work." (Tr. 629). He also noted that she was currently receiving counseling with Victoria Swift every other week for an hour and received medication management from Dr. Varallo. (*Id.*). Plaintiff reported difficulty falling asleep and staying asleep, a loss of appetite, and depressive symptomology including dysphoric moods, irritability, concentration difficulties, and social withdrawal. (*Id.*). She also reported anxiety symptomology including excessive worry, difficulty concentrating, and irritability. (*Id.*). As to manic symptomology, she indicated mood swings, flight of ideas, increased goal-directed activities, decreased need for sleep, excessive involvement in pleasurable activities, distractibility, and more talkative behavior. (*Id.*). Plaintiff

also indicated that she abused heroin from the age of 9 until 21 and abused cocaine from the age of 14 to 21. (Tr. 630). On examination, Dr. Alexander observed that plaintiff was cooperative and adequate in her manner of relating, social skills, and overall presentation. (*Id.*). Dr. Alexander also observed that her speech and voice quality were fluent and clear and that her thought process was coherent and goal-directed. (*Id.*). He did note, however, that she demonstrated a mildly depressed affect and reported feeling mildly dysthymic. (*Id.*). She was otherwise oriented to person, place, and time and demonstrated intact attention and concentration and average cognitive functioning. (*Id.*). Her insight and judgment were fair, and she was mildly impaired in recent and remote memory skills due to nervousness. (Tr. 630-31). Dr. Alexander concluded that there was no evidence of limitation in understanding, remembering, or applying simple directions and instructions; using reason and judgment; maintaining personal hygiene and appropriate attire; and, being aware of normal hazards and taking appropriate precautions. (Tr. 631). He assessed mild limitations in understanding, remembering, or applying complex directions and instructions; interacting adequately with supervisors, coworkers, and the public; sustaining concentration and performing a task at a consistent pace; and, sustaining an ordinary routine and regular attendance at work. (*Id.*). He also opined a mild to moderate limitation for regulating emotions, controlling behavior, and maintaining her well-being. (*Id.*). Dr. Alexander found that her difficulties were caused by distractibility and posited that, although the results of the evaluation appeared to be consistent with her psychiatric problems, they did "not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (*Id.*). The ALJ found this opinion to be partially persuasive. (Tr. 20). Specifically, the ALJ concluded that Dr. Alexander's "overall assessment that claimant's symptoms [were] not significant enough to interfere with her ability to function on a daily basis [was] supported by

[his] largely normal objective findings.  However, the assessment that she ha[d] mild to moderate limitations in the area of adapting or managing oneself [was] not consistent with the claimant's largely normal mental status exams of record."  (*Id.*).

The ALJ also considered the opinions of state agency psychological consultants, K. Lieber-Diaz, Psy.D., and J. May, Ph.D.  Dr. Lieber-Diaz indicated that she reviewed records from Horizon Health Services, the report from Dr. Alexander, Dr. Varallo's June 20, 2019 report, and plaintiff's reports.  (Tr. 633-34).  Dr. Lieber-Diaz concluded that plaintiff's conditions were "non-severe at this time" in light of the available medical evidence of record.  (Tr. 634).  On reconsideration, Dr. May received additional source records from August 2019 that provided an updated status regarding plaintiff's medications and indicated that "things [were] getting better, but [that claimant did] have continued stressors."  (Tr. 671).  Dr. May continued to rate plaintiff's conditions as nonsevere.  (*Id.*).  The ALJ found that the consultants' opinions that plaintiff did not have more than mild limitations were supported by the evidence available at the time of the assessments, "[n]amely, exams noting normal findings including a normal mood and affect, intact concentration, intact memory functioning, intact judgment, and intact cognitive functioning."  (Tr. 20).  He also concluded that these opinions were consistent with the record "as a whole which continued to note the same."  (*Id.*).

Finally, the ALJ reviewed the August 26, 2020 assessment of Brenna Fox, PMHNP-BC.  (Tr. 683-88).  Ms. Fox indicated that plaintiff was being seen weekly for individual and group sessions and monthly by her psychiatrist and suboxone provider.  (Tr. 683).  Ms. Fox indicated that plaintiff had recently completed inpatient substance abuse treatment and would "be focused on relapse prevention and development of skills to manage anxiety/depression."  (*Id.*).  In terms of clinical findings, Ms. Fox indicated that plaintiff was

10

alert and oriented, had intact thought process and appropriate thought content, but did continue to struggle with anxiety, depressed mood, and substance use symptoms.  (*Id.*).  Ms. Fox also indicated that plaintiff had impaired impulse control, generalized persistent anxiety, difficulty thinking or concentrating, substance dependence, emotional withdrawal or isolation, intense and unstable interpersonal relationships, impulsive and damaging behavior, and emotional lability. (Tr. 684).  She assessed that plaintiff was not precluded from remembering work-like procedures; understanding and remembering simple and detailed instructions; carrying out simple and detailed instructions; asking simple questions or requesting assistance; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and, getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes.  (Tr. 685-86).  Ms. Fox did assess that plaintiff's limitations in the following categories would preclude her from performing between 1-10% of an 8-hour workday: sustaining an ordinary routine without special supervision; making simple work-related decisions; performing at a consistent pace without an unreasonable number and length of rest periods; responding appropriately to changes in a routine work setting; traveling to unfamiliar places or using public transportation; being aware of normal hazards and taking appropriate precautions; and, setting realistic goals or making plans independently of others. (*Id.*).  Ms. Fox assessed that plaintiff was precluded from performing 11% to 20% of an 8-hour workday due to her struggles with maintaining attention for two-hour segments and completing a normal workday and workweek without interruptions from psychologically-based symptoms. (Tr. 685).  Ms. Fox assessed that plaintiff's mental abilities would preclude her from performing more than 20% of an 8-hour workday due to her limitations in maintaining regular attendance and being punctual within customary, usually strict tolerances, and dealing with normal work

stress.  (Tr. 685-86).  Ms. Fox explained that plaintiff was "currently on medication that can cause some sedation which can limit quick thinking, and could be dangerous in a setting where she is working around equipment that requires full attention" and that plaintiff "suffer[ed] from anxiety which can be exacerbated by large crowds of people or stress."  (Tr. 686).  She also indicated that plaintiff's conditions could cause increased physical symptoms of anxiety, including racing heart, shaking, sweating, feeling dizzy, light-headedness, and an upset stomach. (*Id.*).  She assessed that plaintiff would be off task 5% of an 8-hour workday and that her impairments or treatment would cause her to miss more than four days of work per month. (Tr. 686-87).  The ALJ found this opinion unpersuasive, noting that it was "not supported by a detailed explanation or objective findings" and was "not consistent with the record as a whole." (Tr. 20).

After evaluating this evidence, the ALJ determined that plaintiff's medically determinable mental impairments caused "no more than 'mild' limitation in any of the functional areas and the evidence [did] not otherwise indicate that there [was] more than a minimal limitation in [plaintiff's] ability to do basic work activities."  (Tr. 21).  Accordingly, the ALJ found plaintiff's mental impairments to be nonsevere.  (*Id.* (citation omitted)).

As stated above, plaintiff argues that the ALJ's step-two severity determination concerning her mental health impairments was not supported by substantial evidence because "the ALJ failed to properly account for clinical findings which do not support [a finding that] [p]laintiff's psychiatric issues were minimal."  (Docket # 7-1 at 22).  Relatedly, plaintiff notes that, "[d]espite numerous treatment records indicating [p]laintiff received fairly extensive psychiatric counseling in addition to her psychiatric medication management, these records were not part of the records provide[d] by Horizon Health Services ["HHS"]."  (*Id.* at 13).  "This gap

in evidence," she contends, "is harmful because the ALJ claimed the medical evidence provided only limited support for her allegations yet[,] given the notable chunk of missing treatment evidence not available . . . , the ALJ did not have a complete medical history upon which to make his assessment." (*Id.* (citation omitted)).

      The Commissioner counters that the ALJ's step-two finding was supported by substantial evidence in the record and that plaintiff "merely . . . disagree[s] with the ALJ's reasonable weighing of the evidence." (Docket # 8-1 at 10). The Commissioner also notes that the "agency requested treatment records from HHS[,] . . . HHS forwarded [p]laintiff's treatment records," and the ALJ "granted counsel's request for additional time to obtain treatment records" from another provider. (*Id.* at 12). Additionally, the Commissioner argues that plaintiff has failed to identify how the alleged missing records "bear on whether she is disabled" and contends that the evidence before the ALJ was "more than sufficient to allow the ALJ to make a determination as to disability." (*Id.* at 13-14).

      As the Second Circuit has stated, "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). "For an ALJ to stop at step two and not continue to the remaining steps is an unusual case." *Ruth H-Z. v. Comm'r of Soc. Sec.*, 2022 WL 2586533, *4 (W.D.N.Y. 2022) (internal quotation omitted). Indeed, the Third Circuit has observed that "because step two is to be rarely utilized as [a] basis for the denial of benefits[] . . . its invocation is certain to raise a judicial eyebrow." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004).

      The record here reflects that plaintiff received ongoing mental health and substance abuse treatment from at least September 2016 through August 2020. Specifically,

from September 2016 through January 2017 plaintiff underwent inpatient substance abuse
treatment through Cazenovia Recovery Systems.  (Tr. 460, 516).  Her discharge summary
indicated that while in treatment she received outpatient services at Horizon Health Services,
including substance abuse counseling with "Victoria" and mental health counseling with
"Maggie."  (Tr. 456).  On January 18, 2017, she relapsed, and was encouraged to attend
outpatient group and self-help meetings to maintain her recovery.  (Tr. 457).

   From June 28, 2017 through September 2019, plaintiff attended regular
medication management appointments at Horizon Health Services.  The records indicate that she
was initially seen by Chelsea Kendra, NP, RN, for bipolar disorder, depression, social phobia,
and opiate use disorder.  (Tr. 530).  She was taking various medications including Prozac,
Lamictal, Seroquel, gabapentin, and Buspar.  (Tr. 531).  Her appointments with Ms. Kendra
varied in frequency from weekly to monthly between June 2017 through October 2017.  (Tr. 532
(June 26, 2017); Tr. 823 (July 26, 2017); Tr. 832 (August 23, 2017); Tr. 841 (August 30, 2017);
Tr. 852 (September 6, 2017); Tr. 863 (September 20, 2017); Tr. 874 (October 4, 2017); Tr. 883
(October 18, 2017)).  The records indicate that she was receiving psychotherapy with "Tori"
every other week and was in treatment for "opiate and cocaine use disorder, severe."  (Tr. 528).
At each appointment, Ms. Kendra recommended that plaintiff continue attending psychotherapy
appointments, including exposure therapy for her social phobia.  (Tr. 530, 821, 830, 840, 850,
861, 872, 882).  The mental status examination results contain references to poor eye contact
(Tr. 825, 865); guarded, preoccupied, and somnolent attitude (Tr. 526, 825, 834, 844); dysphoric
and anxious mood (Tr. 526, 816, 825, 834, 844, 865, 876); low tone (Tr. 526, 816, 825, 834, 844,
846, 865, 876); preoccupied thought content (Tr. 825, 844, 865); a racing thought process
(Tr. 826, 835, 845, 877); rapid cycling with more severe depression (Tr. 830); shaky posture

(Tr. 834); hypervigilant activity (Tr. 834); labile and flat affect (Tr. 834, 844, 865); slow rate of speech (Tr. 854); and, psychomotor retardation (Tr. 844). The treatment records also indicate that plaintiff's aunt and uncle attended an appointment to express concerns about her medications and plaintiff's overstepping of boundaries (Tr. 846), and the provider also reported that plaintiff had difficulty with boundaries in the office (Tr. 878). After eight appointments with Ms. Kendra, plaintiff indicated that her anxiety had not improved and requested a new provider. (*Id.*). Although Ms. Kendra felt that plaintiff's symptoms were improving (Tr. 879), plaintiff was transferred to Dr. Varallo (Tr. 882). By the time of her last appointment with Ms. Kendra, plaintiff was taking Seroquel, clonidine, Zoloft, and Lamictal. (*Id.*).

The record reflects that Dr. Varallo managed plaintiff's medications from October 2017 through May 2019. During that period, he scheduled follow-up medication management appointments at varying intervals ranging from every few weeks to every eight weeks. (*See* Tr. 890 (October 31, 2017); Tr. 897 (November 21, 2017); Tr. 538 (January 30, 2018); Tr. 545 (April 17, 2018); Tr. 551 (June 12, 2018); Tr. 557 (August 16, 2018); Tr. 563 (September 20, 2018); Tr. 570 (October 16, 2018); Tr. 576 (November 13, 2018); Tr. 588 (January 8, 2019); Tr. 582 (March 12, 2019); Tr. 594 (May 7, 2019)). While receiving treatment from Dr. Varallo, plaintiff periodically demonstrated a bright affect (Tr. 895, 555, 580) or denied an overt depressed mood (Tr. 543, 574), but more than half of the time Dr. Varallo described her as exhibiting an irritable, depressed, dysphoric, or anxious mood (Tr. 886, 534, 547, 559, 566, 584, 590), or psychomotor agitation (Tr. 886). Dr. Varallo also indicated that plaintiff had "difficulties coping and dealing with multiple stressors" (Tr. 934), including her newborn having been diagnosed with cystic fibrosis (*id.*; Tr. 941, 960). By Dr. Varallo's last recorded appointment with her, plaintiff was taking Lexapro (in place of Wellbutrin she had discontinued

on her own), Seroquel, Klonopin, and Neurontin.  (Tr. 593).  Dr. Varallo consistently encouraged

plaintiff to continue with her outpatient therapy appointments.  (Tr. 896, 537, 544, 550, 556, 562,

569, 575, 587, 581, 593).

From June 2019 to September 2019, plaintiff received monthly medication

management from two additional providers, Samantha Snell, PMHNP-BC, and Kim Offhaus,

NP.  In June 2019, plaintiff exhibited shaky posture, psychomotor agitation, anxious mood, and

preoccupied thought content.  (Tr. 965).  Ms. Snell indicated that plaintiff was tearful throughout

the appointment after reporting her husband's recent suicide attempt and her son's cystic fibrosis,

which "increased her anxiety levels and . . . ma[de] it hard for her to function."  (Tr. 967).  At the

remaining appointments, her provider observed normal mental status examination findings

(Tr. 653, 660, 987), but plaintiff reported high rates of anxiety or depression and a lower,

irritable, or snappy mood (Tr. 654, 661, 989).  By the last appointment in the record, her provider

was continuing to adjust plaintiff's medications and had started her on Effexor.  (Tr. 992).

Again, both providers recommended that plaintiff continue attending outpatient counseling.

(Tr. 969, 656, 663, 992).

On July 30, 2019, Ms. Snell completed a medical examination for employability

assessment and indicated that plaintiff was moderately limited in her ability to maintain attention

and concentration; interact appropriately with others; maintain socially appropriate behavior

without exhibiting behavioral extremes; and, function in a work setting at a consistent pace.

(Tr. 722).  Ms. Snell indicated that plaintiff struggled "with interactions and social settings

including making calls [and] talking to individuals."  (*Id.*).  She further noted that plaintiff

"currently [was] struggling with significant anxiety." (*Id.*).  The ALJ's decision does not explicitly indicate that he reviewed or considered this opinion.[3]

On December 30, 2019, Victoria Swift completed a mental health report indicating that plaintiff had shown improvement since the beginning of treatment but had missed eight of the last ten appointments and was currently engaged in drug/alcohol treatment. (Tr. 718).  She also indicated that plaintiff was unable to work due to mental health issues.  (*Id.*). Plaintiff indicated in her disability reports that she treated with Victoria Swift for counseling from December 5, 2016 through July 24, 2019.  (Tr. 306-307, 348).  The record does not contain records from these appointments, and the ALJ's decision does not reflect that he considered Swift's opinion.

The record also reflects that plaintiff was treated by Anita Williams, M.D., for opioid dependence treatment between October 2018 and November 2019.  (*See* Tr. 787 (October 18, 2018); Tr. 786 (November 5, 2018); Tr. 785 (November 15, 2018); Tr. 784 (November 29, 2018); Tr. 783 (December 13, 2018); Tr. 782 (December 28, 2018); Tr. 780 (January 11, 2019); Tr. 778 (January 25, 2019); Tr. 776 (February 7, 2019); Tr. 774 (February 22, 2019); Tr. 772 (March 22, 2019); Tr. 770 (April 18, 2019); Tr. 768 (May 16, 2019); Tr. 766 (June 13, 2019); Tr. 764 (July 11, 2019); Tr. 762 (August 8, 2019); Tr. 760 (September 5, 2019); Tr. 758 (September 19, 2019); Tr. 756 (October 17, 2019); Tr. 754 (November 12, 2019)).  Dr. Williams observed that plaintiff either had a good or serious mood, but plaintiff often reported suffering from anxiety, depression, or panic attacks between appointments.  (Tr. 787 (reporting anxiety

---

[3] Under the new regulations, nurse practitioners are "acceptable medical sources," 20 C.F.R. § 416.902(a)(7), and therefore their opinions should be considered in accordance with 20 C.F.R. § 404.1520c(b), (c). *See also Otero v. Kijakasi*, 2022 WL 1051164, *13 (S.D.N.Y.), *report and recommendation adopted by*, 2022 WL 951061 (S.D.N.Y. 2022).  Even if not an acceptable medical source, the ALJ is obligated to consider all opinions of record.  *See* 20 C.F.R. §§ 404.1520c(c)(2); 416.929(a); *Acosta Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, *15 n.13 (S.D.N.Y. 2021), *report and recommendation adopted by*, 2022 WL 717612 (S.D.N.Y. 2022).

and depression); Tr. 786 (same); Tr. 785 (same); Tr. 784 (same); Tr. 783 (reporting anxiety and

depression and shortness of breath associated with panic attacks); Tr. 782 (same); Tr. 780

(reporting unchanged anxiety, decreased depression, and one panic attack since last visit);

Tr. 778 (reporting unchanged anxiety and decreased depression with no panic attacks since last

visit); Tr. 776 (same); Tr. 774 (same); Tr. 772 (reporting unchanged anxiety, decreased

depression, and one panic attack since last visit); Tr. 770 (noting diagnosis of postpartum

depression, unchanged anxiety, and no panic attacks since last visit); Tr. 768 (noting decreasing

anxiety and depression with no panic attacks); Tr. 766 (reporting extremely increased situational

anxiety, increased depression, and at least 5-6 panic attacks since last visit); Tr. 764 (reporting at

least ten panic attacks since last visit); Tr. 762 (reporting at least three to four panic attacks since

last visit); Tr. 760 (reporting at least one to two panic attacks since last visit); Tr. 758 (reporting

two panic attacks since last visit); Tr. 756 (noting decreased situational depression with new

diagnosis of bipolar depression newly treated with Lamictal); Tr. 754 (reporting two panic

attacks since last visit)).

         The record indicates that plaintiff was again admitted for treatment for substance

use disorder from July 31, 2020 through August 21, 2020, at Clearview Treatment Services.[4]

(Tr. 790).  Her prognosis and condition upon discharge were guarded, and she was referred for

aftercare through Somerset House and counseling with Amanda at Horizon Health Services.

(Tr. 791).  The record contains a letter from Amanda Krugolets, LMSW, from Horizon Health

Services dated July 27, 2020, indicating that plaintiff initiated treatment at HHS on September

---

[4] Despite the fact that plaintiff entered into inpatient substance abuse treatment just months before the
hearing, the ALJ did not mention plaintiff's substance abuse diagnoses when identifying her medically determinable
conditions, much less determine their severity and materiality.  *See* 20 C.F.R. §§ 404.1535(a), 404.1535(b)(1),
416.935(a), 416.935(b)(1).  On remand, the ALJ should consider whether plaintiff's substance abuse is a medically
determinable condition and, if so, its severity and materiality to any disability determination.

18

29, 2016, was enrolled in and compliant with current treatment, and was "unable to work due to [her] work on addressing her substance use and mental health symptoms." (Tr. 716). The ALJ's decision does not reflect that he reviewed or considered this opinion.

        "[T]he question here is whether the medical evidence establishe[s] that [p]laintiff's [conditions] w[ere] clearly insubstantial so as to justify the ALJ's determination to stop at step two." *Ruth H-Z. v. Comm'r of Soc. Sec.*, 2022 WL 2586533 at *6. The record in this case demonstrates that plaintiff's mental conditions were ongoing and recurrent and required regular counseling and adjustments in prescription medications and that she frequently presented as anxious and depressed during treatment sessions. Such evidence, which was largely ignored or significantly minimized by the ALJ, satisfies the *de minimis* threshold of step two. *See Michael F. v. Kijakazi*, 2023 WL 3305426, *2-3 (W.D.N.Y. 2023) (concluding that the ALJ erred in finding plaintiff's anxiety nonsevere where treatment notes reflect monthly therapy and medication, multiple opinions "contributed mental RFC assessments[,]" and the ALJ ignored a physician's assessment of moderate limitations); *Jatava L. v. Comm'r of Soc. Sec.*, 2021 WL 4452265, *4 (W.D.N.Y. 2021) (noting that where treatment notes regularly reflected that plaintiff reported symptoms of anxiety and depression, she was treated with medication for those symptoms, and she indicated that she had anxiety attacks two to three times per week, "there [did] not appear to be substantial evidence in the record to support the ALJ's finding, at step two of the analysis, that plaintiff's mental health impairments were *de minimis* or constituted only a 'slight abnormality'"); *Valencia v. Berryhill*, 2017 WL 4570755, *4 (W.D.N.Y.) ("[t]he long-term prescription of medications such as Effexor, Seroquel, Wellbutrin, and Klonopin, along with the various reported symptoms experienced by plaintiff (i.e. depression, periods of crying, suicidal ideation, panic attacks, inability to sleep, low motivation, and hypomania),

appear to suggest that plaintiff's mental impairment would have some impact upon her ability to work"), *report and recommendation adopted by*, 2017 WL 4552892 (W.D.N.Y. 2017); *Oakley v. Colvin*, 2015 WL 1097388, *6 (N.D.N.Y. 2015) (where "the record reflects ample clinical signs and findings of depression[,]" the ALJ's reference to minimal medication, treatment, clinical signs, and inpatient hospitalizations "might be persuasive . . . at sequential Step 3" but inappropriate at step 2); *see also Magwood v. Comm'r of Soc. Sec.*, 417 F. App'x 130, 132 (3d Cir. 2008) ("[t]he medical evidence adduced by [plaintiff] demonstrated that she was receiving psychiatric services on a regular basis, was engaged in therapeutic counseling on a weekly basis, was taking antidepressants, was assessed as functioning with a GAF of 55-60, and had an opinion from a treating psychiatrist that she was unable to work on a sustained basis[;] [t]his was more than sufficient"); *Julieann H. v. O'Malley*, 2024 WL 511633, *6 (D.N.J. 2024) (where physician "described [p]laintiff's major depressive disorder as recurrent and moderate, [p]laintiff regularly attended counseling throughout the relevant period, and [p]laintiff's providers prescribed several psychotropic medications that had to be adjusted throughout the relevant period during which often she presented as tense, apprehensive, tearful, upset, worried, depressed, or anxious[,] . . . the ALJ appears to have either ignored certain relevant evidence or have implicitly weighed the medical evidence and construed any doubts against [p]laintiff" in finding against plaintiff at step two). *Cf. O'Connor v. Saul*, 2020 WL 1242408, *3 (W.D.N.Y. 2020) ("[a]n ALJ[] . . . cannot properly deny a claim at step two of the sequential evaluation unless the medical evidence 'clearly' indicates that the claimant's impairments, when combined, are not severe") (quoting SSR 85-28, 1985 WL 56856, *3 (1985)).

Based upon my review of the longitudinal record, I cannot conclude that the ALJ's conclusion is supported by substantial evidence. *Marcus L. v. Comm'r of Soc. Sec.*, 2021

WL 4204981, *6 (W.D.N.Y. 2021) ("the medical evidence does not clearly establish[] that plaintiff's mental health impairments cause no more than a minimal effect on [his] … mental abilit[y] to perform basic work activities") (internal quotations omitted).  By repeatedly characterizing the record "as a whole" as demonstrating normal status examinations despite frequent abnormal results, the recurring need to adjust plaintiff's medications, and extensive counseling, and by failing to acknowledge all of the providers' opinions, the ALJ appears to have "improperly overlooked certain portions of the[] records, the proper evaluation of which could have altered the ALJ's evaluation of the severity of [p]laintiff's mental impairments." *Vitale v. Comm'r of Soc. Sec.*, 2018 WL 3155833, *2 (E.D.N.Y. 2018).  *See also Benoit v. Saul*, 2019 WL 6001596, *6 (D. Conn. 2019) ("[i]n light of this evidence, it is difficult to see how the ALJ concluded that [plaintiff's] mental impairments were so *de minimis* as to be non-severe, since this evidence provides more than 'minimal limitations' on her ability to carry out work-related activities").

Because remand is appropriate due to the ALJ's erroneous severity determination, I do not reach plaintiff's contention that the ALJ also erred by failing to develop the record.  (*See* Docket # 7-1 at 13-19).  That said, plaintiff's mental health counseling records would appear significant to any disability determination as they likely reflect "frequent and sustained contact" with plaintiff.  *See Clark v. Comm'r of Soc. Sec.*, 2017 WL 1162204, *3-4 (S.D.N.Y. 2017) (in addition to medication management records, counseling notes that "contain detailed descriptions of [plaintiff's] symptoms and their impact on [her] daily life . . . [are] critical to a full evaluation of [plaintiff's] functional capacity").  The fact that nearly all providers encouraged plaintiff to continue with counseling and Dr. Varallo indicated that he discussed plaintiff's "issues" with her

primary counselor suggests that plaintiff's counseling treatment notes may provide a fuller

picture of plaintiff's mental health conditions and limitations.  (Tr. 562).

        Of the six opinions of record from five different Horizon Health Services

providers (Varallo, Fox, Snell, Swift, and Krugolets), the ALJ found the more significant

limitations assessed by the first two providers inconsistent with or not supported by objective

findings – and did not even mention the opinions of the other three – *without* the benefit of all

treatment notes.  On remand, the ALJ is urged to attempt to obtain the missing treatment records

(through a subpoena, if necessary) and consider that evidence along with the other evidence of

the record.  *See Tammy H. v. Comm'r of Soc. Sec.*, 2019 WL 4142639, *11 (N.D.N.Y. 2019) ("in

light of the substantial lack of treatment notes . . . , and the fact that the ALJ's disability

determination relied heavily on plaintiff's mental limitations, the ALJ should have made every

reasonable effort to fully develop the record[;] . . . including by subpoena if necessary, to collect

the missing therapy notes") (internal quotations omitted); *Gardner v. Colvin*, 2019 WL 3753797,

*17 (E.D.N.Y. 2019) (remanding where ALJ did not attempt to obtain plaintiff's psychotherapy

notes); *Harris ex rel. N.L.K. v. Berryhill*, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018) ("[t]he fact

that the essential treatment records were requested, but not received, does not obviate the ALJ's

independent duty to develop the record, particularly since the ALJ could have exercised his

power to subpoena them") (internal quotations omitted); *Morales v. Berryhill*, 2018 WL 679566,

*16 (S.D.N.Y.) (failure to obtain treatment records, including biweekly therapy sessions and

monthly medication management meetings, created obvious gap in the record particularly

because "the ALJ's duty to develop the record is heightened in instances where the claimant

alleges that he or she suffers from a mental illness"), *report and recommendation adopted by*,

2018 WL 679492 (S.D.N.Y. 2018); *Rizzo v. Berryhill*, 2017 WL 3578701, *16 (S.D.N.Y. 2017)

(missing treatment records from weekly therapy sessions with licensed clinical social workers created an obvious gap in the record); *Merritt v. Comm'r of Soc. Sec.*, 2016 WL 6246436, *5 (W.D.N.Y. 2016) ("[k]nowing that a lack of documentation was problematic . . . , the ALJ[] could have done what counsel did – contact the [provider], several times if necessary, to obtain the complete record[;] . . . [t]his failure warrants reversal and remand"); *Ajibose v. Colvin*, 2016 WL 8711342, *8 (E.D.N.Y. 2016) (ALJ failed to develop record where claimant testified that she attended therapy sessions and medication management appointments but record contained only notes from initial or diagnostic screenings).  The ALJ is also urged to consider and address the opinions of Snell, Swift, and Krugolets, which he overlooked.  *See* 20 C.F.R. § 404.1520c(b) ("[the Commissioner] will articulate in [the] determination or decision how persuasive [the Commissioner] find[s] all of the medical opinions . . . in your case record"); *see Jedadiah C. v. Comm'r of Soc. Sec.*, 2022 WL 4104007, *8 (N.D.N.Y. 2022) ("the ALJ must . . . articulate how he or she considered the medical opinions and how persuasive he or she finds all of the medical opinions[;] . . . [t]he ALJ utterly failed in this obligation, in that he did not mention, much less evaluate, the opinions of [plaintiff's treating surgeon]") (internal quotations and brackets omitted).

## **CONCLUSION**

Accordingly, the Commissioner's motion for judgment on the pleadings **(Docket # 8)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 7)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is

remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further

administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
_____
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
     March 21, 2024